May it please the Court, my name is David Azar from Millburg representing plaintiffs. The primary error by the District Court, why the District Court rebused its discretion, is it never reached the fact, never focused the focus that there are common questions, sorry, common answers to common questions based on state law principles for the eight states at issue that will resolve not only the contract claims, but will allow the non-contract claims as well. And none of those require individual determinations. The, I'd like to start and go straight through the abuse of discretion to make it clear which aspects of the Court's decision were abuses of discretion. If the Court focuses on... Did the Court identify the correct legal standard to be applied? For classification? Yes. Generally speaking, yes. Generally speaking, yes. Did the Court apply the legal standard in a way that was logical, plausible, and with support in the record? No. So you are suggesting then that the part of the abuse of discretion is that what the Court did was illogical, implausible, or had no support in the record? Correct. Okay, I just wanted to make sure, because I thought the Court applied the correct legal standard, and I thought that's where you were going, but when I read your brief, I was finding mixed signals. So I just wanted to make sure where you're going. Well, I think the mixed signals, you may have sensed, was that we didn't think the Court applied the legal standard correctly in a way that, you know, raised the issues that we raised. Well, that answers the opposite of what you said, that the Court didn't apply the proper legal standard. And then you said, yes. Then you just said the Court didn't apply the proper... I didn't have to clarify. I misheard. I thought what the Court stated laid out the proper standard the Court's supposed to apply. So I apologize. So the best you think the Court did was lay it out in the decision, but the application was wrong? Correct. I see. So we can get rid of any legal framework. Let me ask you, just to lay out, there's two questions at the end which are of some worry to me, and that is when we're dealing with the last questions that are here, the 23B1, the 23B2. It seemed to me with B1, the Court said you didn't put enough in this. Then the next thing you said was, well, I didn't have enough time because he didn't allow me to get more pages. And then I didn't see any place where you are arguing the Court erred by failing to give you more pages. All I heard was he just made a wrong decision. Well, I think that certainly implicit, and we thought it was implicit at the time, that based on the nature of the argument that was to be done, the Court erred by not giving us additional pages. You know then you admit that your only argument is in the footnotes at best for 23B1. Correct, but what we did point out is that that provided sufficient case authority and it was sufficient for the Court to engage with him. That's what our position is. Well, you know, I guess in terms of, you know, after Walmart, sometimes, you know, there's a little bit of crossover between the two. But I guess just in terms of if you're just looking at it, you seem to be saying that the Med, or what is it, the modification effective date, that if you can just answer that question, that's a common question. But I'm reading things and it seems like the modification effective date, depending on the Treasury directive and the circumstances of each individual class member, that it moves. So they don't all have the same, you know, there's not just one Med. And I think I read in the briefs that, or somewhere, that there's like 19 different TPPs that are going on in all of this. So I'm just wondering why doesn't sort of the factual predicate here have the same problem that the people in Walmart had because, you know, the Court found difficulty with the fact that the class was all the people, all the women that didn't get promoted, but some didn't even put in for, you know, there were just all sorts of individualized concerns that had to be made to answer the common question. Right. I'm glad you raised that, Your Honor, because this is probably the most important point to clarify what this contract works and why the district court conflated a different contract with the obligations of this contract. So the focus of our case is the TPP agreement. That's at ER-284. It is a primary TPP agreement. The variance of it, that the 19 sort of separate agreements, are virtually identical in terms of the material characteristics. Putting aside the TPP notice, I'll get to that in a second. I'd like to focus specifically on this TPP and explain to you why the modification effective date is a set date that's not affected by what the borrower does. The reason is because our view is that this is its own independent agreement. It's between the borrower and between the city. The separate document, the separate agreement that the city wants to talk about is the agreement between the city and the government. The borrower is not a party to that. They don't connect. So the question is, is this contract by itself sufficiently amenable to common answers to the contractual questions of the eight state laws so that a court can make a merits decision that applies to everyone? Now, the obligation to provide information, and so here's the key underlining, I think, answer to your question, is paragraph one of the TPP refers to my representation. A representation as a matter of contract law is a statement of fact. It's not an executory obligation. The city then has three to four months, depending on the TPP, to verify, to determine if that representation is correct. And if the city decides it's not correct, it should deny or decide it just doesn't care enough and it wants to give a modification anyway or wants to do something else. But that's the city's decision. The borrower's obligation, the affirmative executory obligation of borrower is on day one, sign the TPP, make representations. One of the representations is at the time of signing this, they either have provided or ready the documentation to city to back up the income, or they are providing the documents. So at that moment in time... But how can you do that without doing a number, but going into the facts of each case to get to that point? Because we don't care for our case, and this is one key distinction in our case with some of the others out there. We do not care whether or not someone actually qualified for a modification or not. Our case is about, on the class side, whether or not city made a timely decision to either deny or to offer modification by the modification effective date. So it doesn't matter. It doesn't matter if someone qualified. It doesn't matter what they didn't qualify. This is whether or not city acted by the modification effective date to make some decision, and that information is in the record. Is there an exact timeline that applies to everyone? Yes. Because some of these people, I know they started and they were doing it over the phone. Then it wasn't verified, and then it turned out those people didn't qualify. Or sometimes people need longer to put their documents in. And so when they have to make a decision, because you're saying that they didn't give the answer in time, right? Right. So does the same time apply to everyone? It does, and the reason is because- I don't know how that can be. I'll explain this. I'm suffering from the same problem that Judge Fischer was having, I think. You know, the city probably did not do a great job in drafting this contract and setting this up. So let me explain to you why. All the things that you talk about are preconditions before they get this contract. So we don't care about those, you know, the miscellaneous oral conversations at first. What we care about is there's a contract, it's an enforceable contract. We also know that the other questions that you raise, perhaps, what happens if someone doesn't come up with the documents? What happens if there's some sort of other conversation? All of those are susceptible to common answers based on common state law. We provided to the district court a survey of state law. Surveys, actually, of state law. One on waiver of contractual conditions, that ER 76 to 78. Well, I guess what I'm saying is if let's say you said we have 30 common questions that will resolve all of these cases. Does that defeat commonality? Is that like, okay, we'll resolve all of these factual disputes in 30 different questions? That's what, I mean, common question, maybe there could be more than one question. But can there be 30? There aren't 30. Can there be 50? There's either one or maybe four at the outset. That's it. Number one is, does the TPP contractually, by the law of the eight states, require city to make a decision one way or the other by the modification effective date? Goes across the board. If the answer is yes, then city is going to be liable. And if the answer is no. But is the modification date the same in every case? Yes, it's the same. It's the same, and the reason I can well point you to, Your Honor, is if you look at paragraph two, just in the middle of it, it defines modification effective date. It gives a set date, a set method of calculation. It says during the period, the trial period, commencing on the trial period effective date, and that's defined in page one in the first line, and ending the earlier of the first day of the month following the month in which the last trial period is due, in parentheses, the modification effective date. It is not varied by anything in terms of the things that you were just talking about, Your Honor. So that's a set, hard and fast date. So if that was the question and the answer was no, then do you lose? Well, we still get certified, but the class may lose, but it's still certified because it's a common question. So is that question, answering that question will not, then you don't have to individualize all the many cases in there? Well, no, then let me say to you, we lose as a class at that point if people do not have to make a decision by that date. And this is about the class claim, and therefore, the class, you know, people would know it would be a decision applying to everybody. That city does not have the obligation. So does every contract have an MED on it? Yes, all except for the TPP notices. So there is a version of this that's technically within the class that really would need to be dealt with in a subclass situation that doesn't have the modification effective date language in the contract itself. But the other versions of this, either this regular form right here, or the form that switched over when they got documents at first, all has the same language modification effective date. And to be very specific about this, you have the same modification effective date language. You have the same first two paragraphs. You have the same representation. But does each TPP on it have a modification date, an actual date, not just defining what a modification, not? Well, it has the same language that I just mentioned to you. But does it have a date on there? No, but it gives you the information to calculate the date just within the document itself without any relation or reference to a document outside of this document because it relates to the chart above and it relates to the date on page one. So it's as simple of a calculation as one can imagine. It's not in doubt. And our expert indicated that inside of Citi's data he can calculate what the modification effective date was. And, by the way, if Citi decides, if Citi thought internally that it changed its modification effective date, our expert says, yeah, well, we have the data also to be able to indicate what Citi thought the changed modification effective date was. And, therefore, we could even figure out when that Citi blew the deadline as to that other date as well. What did you say you wanted to reserve? I forgot. Five minutes. A minute and a half. So it seemed to me that the district court said that the MED in the TPP itself was not sufficient to determine the deadline by which Citi must give the answer because individual issues such as changes in income, inaccurately reported income, our applicable treasury directives must also be considered. And that made it individual. Why is that wrong? Because each of those apply. None of those factors relate to this breach of contract. For example, changes of income, you cannot find a place in that TPP that changes the modification effective date by anyone's change of income. The formula is clear. The statement is clear. There's no effect. The reason that there's a confusion is because change of income may affect down the road whether you actually get a modification, but it doesn't affect whether or not Citi doesn't affect the date, the modification effective date, at which Citi needs to make a decision of some kind. That's the reason why. Same thing goes with whether they got the documents or not. Same thing goes to whether there's inaccurately or incompletely reported information. Same thing about oral written representations, about whether documents are still needed. It doesn't change the fact we have a date, Citi needs to make a decision, and our position about that is subject to a common answer applying the contract laws of each of the eight states at issue. I am now reserving the rest of my time for buttleness. Thank you. Thank you. May it please the Court, Michelle Oterizzi for Citi Mortgage. Good morning. Good morning. The key question here, which Your Honors have identified, is whether there's a common answer to the question of when Citi had to make a decision. Just so that I understand, just going through, did you concede that a common question exists under 23A2? The common question that I conceded exists, Your Honor, is whether the TPP can be read so that it unambiguously requires a decision by the Med no matter what. And that is true. That is a common question. Okay. Did you also concede that the remaining three factors of 23A before the district court? No, we did not, Your Honor, but the district court ruled on predominance. Okay. So I just want to understand, so I'm just getting the right lens and right construct. So in Comcast, the Supreme Court held that a trial court must conduct a rigorous analysis that the prerequisites of Rule 23A have been satisfied, right? Right. Okay. And so under Comcast, should the district court have analyzed all the 23A factors before reaching the 23B provisions? Well, Your Honor, I think that commonality and predominance, as you indicate, are very, very closely linked. I know, but under Comcast, should you go 23A before you get to 23B? And did the district court do that? Well, the district court did find that there was one common question. Okay, but didn't go to the other three factors of 23A, right? Right. Found one common question. And then went to predominance and found that there was no predominance, and that was absolutely right. And once the district court had found that, that was game over at that point because the plaintiffs had not really made an argument with respect to any other of the 23B1 or 23B2. So really, once you found you don't have 23B3, and the court also found no superiority, there was no need for any more discussion. Okay. And frankly, that's why the briefs in this court are focused on 23B3 because as I went through on 23B1, really all we got is in a footnote or two. And as we looked at 23B2, they didn't ask for the right relief, correct? That's right, Your Honor. And on those two, Your Honor, they just absolutely don't fit. This is not a situation where you have to have a class action in order to decide that issue. When you have issues of law that come up in different cases, courts don't class for that. You're saying that on the point that Judge Callahan was raising, that of the 23A factors, the only one that really relates to 23B3 is the commonality question. So that's the only one the court had to address if it then went on to find that you don't qualify under 23B3. Right, right. But Your Honors don't even have to answer. I mean, it's a threshold legal question which Your Honors could answer. We don't think we've gone through in our brief and explained why the MED was not a deadline for Citi to make a decision. It doesn't read as a deadline. In fact, what the contract says is that if by the MED, the lender has not given you both a countersigned TPP and a loan modification agreement, or you haven't made all your payments, or the lender has decided that your representations were not true, then the TPP will expire. It doesn't say this is the date by which you must make a decision. And in fact, plaintiffs now concede that the MED could be extended. And so even if their interpretation were plausible, which we think it's not, there are still a myriad of facts to answer the question of when was Citi's deadline. For example. Well, they're sort of presenting it as they've got several common questions. And so they're saying if you've got several common questions, all those common questions are subject to an answer, and then it doesn't have to be an individualized inquiry. What's your response to that? Well, yes, Your Honor, there's various levels of it. And at each level where they have a legal question, we've gone through and aggrieved why they're wrong on the law. You can have oral modifications of time limits, for example. So their argument that there had to be a bilateral written agreement is wrong. There are waiver and estoppel arguments about deadlines here that they say just because we took people's money, we waived all of our rights to ask them for more documentation. So in a similar, this is, I'm not, I know this isn't the facts of your case. Right. But what would, if it's a common question that they're proposing, the plaintiffs are proposing appellants, if that common question, what would the agreement have to look like? What would, there has to be, you know, I always look at one thing. There's got to be a class somewhere, but this might not be a class. So what would a class look like under these type of circumstances? If they, how could they find a class in this? Well, if the document were written to say city must, there's a service or decision date, and city must make a decision by the service or decision date, whether or not you have your documentation in, cannot give you any extensions, then they might have an argument that if city didn't give an up or down by that date, that there was not a timely decision. And then we would have to look at the question of whether you could figure out whether city had violated, had breached that obligation through common proof. They say they can do it through an algorithm in the district court. We had expert reports saying they can't do that. So we say even if they're right, there's common questions. But even if they're right and you would say the contract reads so that city ordinarily had to decide by the med, it's subject to extension. Hamp, they were told by the government, you not only should extend if people haven't given documents, you must extend. And then you have the situation of a borrower who calls up and says, I don't have my documents in. I don't want you to deny me because if the TPP ends, the lender can start foreclosure proceedings. So that was what the government was trying to do with TPPs, keep people in their homes. So if somebody calls up and says, I want an extension to give you my documents, don't deny me, and city says, fine, you have more time, keep on the TPP, keep paying, we'll look at your documents. How can they sue city and say, you shouldn't have given me that extension? You shouldn't have given me that extension. You didn't give me a timely denial. That's their argument, Your Honor. And so we say for everyone, you have to look at that. They talk about city's unilateral decisions to give extensions. City gave extensions when the Treasury said give extensions. So that may be deemed unilateral, but then the borrower didn't have to stay in the TPP. If they had other alternatives, they could have exited. They chose to stay in the TPP, and you've got a question of whether that's a waiver of any claim that you had to decide by the Met. That's totally individualized. And then you have to determine which document they had because, as counsel said, TPP notice says nothing about a Met, says nothing about a decision date. You have some agreements that are at different times where you have different HAMP guidance from the Treasury. Now, counsel said city mortgage wrote these documents. City mortgage didn't write these documents. The government wrote them. And in every cover letter that went with a TPP to people, they were told, send this back, sign it, give us your documentation. When you do that, make your first payment. But if you need an extension, call us. So what you had and what the Treasury found and what the Inspector General's report, which is in the record, shows is that many, many people, particularly in this first stated income period where they were giving TPPs based on telephone calls, many people did not get all of their documentation in when they should have. And the servicers had to chase them. And the servicers were told to give them extensions. So when you have that kind of a fact pattern, how can they possibly say that they can figure out on a class-wide basis, without looking at individual circumstances, whether city made a timely decision or not? And just to take one plaintiff, a named plaintiff, the DeRosas, DeRosas, yes, they called up for a loan modification perfectly in good faith. They told city that they had a certain income because with HAMP, they tried to get you down to 31 percent of your gross income. So if your income is too high, you can't get a loan modification. If it's too low, you can't get a loan modification. So the DeRosas send in their documents. I believe they sent them in in October. Their TPP, their trial period was ending, I want to say, December 30th. And city comes back to them and says, you've got overtime in here, and your overtime puts you over on your income. And their response is, well, we really, you know, that overtime, we're not sure we can have it in the future. We're not sure it's still going to be there. So they go back and forth on the documentation and whether or not they could be eligible, and then city denies them in January. So it's a short period of time with city violating a duty to give them a timely answer. In order to have anyone decide that question, city is entitled as a matter of due process to put that story on to a jury. And you've got, according to plaintiffs, 40,000 people who they say did not get a decision by the date that they say city should have decided by the Met. So there are going to be questions also of whether anyone was injured. Their brief suggests that nobody wanted extensions, that everyone was hurt by being on a TPP for an extended period of time, but yet borrowers didn't get their documents in, and many people we know were avoiding foreclosure. So if they avoided foreclosure, were they harmed? Was there a material breach? You have all of those individualized issues, and there is no way that they can be decided on a class-wide basis. That's why in the Bank of America HAMP litigation in Massachusetts, the judge denied class certification because of all of these individual issues. The First Circuit denied a 23-F in that case. And the Corvello case, which plaintiffs gave Your Honors a 28-J letter on yesterday, which just came down last Friday, in that case the court denied class certification on a contract claim very much like this because it said, what do you do with borrowers who asked for an extension? You can't figure it out. Are you aware of any cases out there where the class certification has been granted on similar factual situations? The plaintiffs cite the Gowden case where classes were certified. That was a different factual situation, though, because in that case the way the TPP is supposed to work is that you send in your documents, you send in your payment, and the servicer is supposed to then, if they find you eligible, countersign it and send it back to you. Well, Saxon in that case had countersigned the TPPs, and the class consists of people who got countersigned TPPs. And there the court found you could have a class because it found that the servicer, by countersigning and accepting it, had given up its right to say you weren't eligible. Here, Citi did not do that, and it was still in the process of deciding eligibility. And the other thing to keep in mind is that the rules as to whether you were eligible were not Citi's rules. They were Treasury's rules. So Citi could not give a loan modification unless someone was eligible under the Treasury rules, and those rules changed over time, as did the documents that people were required to supply. So, yes, there were times when if a borrower took too long to complete their documentation, it became stale because you couldn't make a decision unless the documentation was within 90 days. So then they had to start all over. So were there delays? Absolutely. But to figure out whether Citi reached any obligations under the TPP, even if we assume that the TPP did put an obligation on it, on Citi, to make timely decisions when the borrower fully performed by providing all of its documentations, figuring out what the deadline is, whether it was breached, totally individualized. So, and plaintiffs have tried to invent this theory that the MED is an absolute fixed deadline in order to get around that, but it just doesn't work. Even if it were a plausible interpretation of the contract, it doesn't work because what they're saying is Citi had to deny people right away. And the Treasury is telling Citi, don't deny people, extend them, because we want to keep them in their homes. And so we would ask your honors, if you have no more questions of me, to affirm the decision for law. Thank you. Thank you. Thank you. Counselor, I really do believe that the biggest problem you have with this particular judge, and I have no way to bind my colleagues, so maybe I'm just out in the left field, is that this is an abuse of discretion decision on a logical, implausible, and without support in the record. And I've got the case, as counsel has suggested, Bank of America case out of the First Circuit. I've got a few other cases that I looked at, which I also saw where the certification was not granted. And now I'm looking at illogical, implausible, or without support, and you are asking me then to decide that the district court abused its discretion in this decision. Correct. What case do I find that makes it abuse? Because I found Bank of America pretty close, and I also found other cases where I read. And I guess, again, this is a district court decision. This is the case that Judge Rakoff makes every day. And now you're saying to me, on appeal, reading documents, what is that which says that's an abuse? The simple answer is that the factors that the district court listed to show differences among class members does not meet our theory. And our theory is that the modification effective date is a deadline, and it does not depend on any particular borrower's submission of any documents. So if I don't agree with you as to that deadline approach that you're suggesting, then you lose? On the merits, I lose, yes. Well, on the class certification, you lose. Well, I wouldn't agree with that because I think Your Honor's question, or the way you framed it, is that it's ultimately a merits question about whether or not the contract matches or not. I'd like to emphasize, too. Yeah, but on a class certification, the judge can take a look at the merits for the limited purpose of seeing what the likelihood is, whether this will be meaningful as a class. True, but my point, Your Honor, is I think that the case law that we cited, Godin, I disagree with counsel's interpretation of it. That certified the class. I think the other cases in our brief, they support the fact that our theory has sufficient viability that it should go to a merits decision. The other important aspect here, Your Honor, is that we have several other non-contract claims that have nothing to do, do not rely on any of these facts. So the court completely abuses discretion by applying issues such as, you know, whether you've got the documents, whether income changed, to, for example, the consumer protection and good faith claims that we have. Those relate to the failure of Citi to put certain structures in place so that they could accomplish their obligations. We go through the details of that at 838 to 839 of our opening brief. I want to emphasize that the government settlement specifically says that Citi had committed unsafe and unsound servicing and foreclosure procedures. So we're not talking about isolated problems. We're talking about a systemic problem in terms of how Citi and some of these other banks affected people's homes. The worry that I have is when I look at your cases where you say certification was granted, if I had that case in front of me and it was a non-abusive discretion, I could very well say, okay. My worry is that it's an abusive discretion and there are others who are close that they say no certification. So I'm not finding that case which says this is illogical or implausible or without support. You can cite all the cases you want for your side, but when I go to it, the judge is again making an abusive discretion decision, and that judge said certify. On the other hand, judges with similar questions, and I'll be fair, I ponder. I gave you the question that I very much pondered because I wanted you to answer it. But in those situations, I'm having a tough time understanding why that's illogical. It's illogical because we're entitled to have our theory evaluated by the district court, and the reasons that the district court gave do not match your theory. You can have your theory for each one of your people. You can have your theory. If they're not common, every one of them can come forward and have their theory tested. We're not determining whether they can have their theory tested. We're only determining whether the theory is so common that it can be class certified, not only can be but must be because I can't overcome the district court on a can. It's a must. Right, and our position is that, is that you have a common question about the contract, what this contract means, it applies to everyone, and the district court's rationale doesn't match that theory, doesn't match the consumer protection good faith theories, does not match the debt collection theories. It has nothing to do with these individual questions, and those do not appear either in the decision at all, the debt collection ones don't appear in the decision whatsoever, and the consumer protection good faith, there's no reference at all to the failures by city to have procedures in place. Thank you. All right, thank you both for your argument. It was helpful in this matter. This case will stand submitted. The court's going to take a short recess, and then we'll hear the last case on calendar.
judges: Callahan, N.R. Smith, Rakoff